**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ETHAN EUGENE DORSEY,              *

                            *

      Petitioner,           *

                            *

vs.                          *    CIVIL ACTION NO.10-00362-CB-B

                            *

GARY HETZEL[1],              *

                            *

      Respondents.       *

## REPORT AND RECOMMENDATION

Petitioner Ethan Dorsey, a state inmate in the custody of Respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 9). This matter is before the undersigned Magistrate Judge on Dorsey's petition, Respondent's answer, briefs, responses and exhibits filed by the parties, the state court records, and opinions and orders of the state appellate courts[2]. Following a careful review of the

---

[1] On March 23, 2012, Petitioner filed a Notice of Change of Address (Doc. 18), wherein he advised the Court of his transfer to Easterling Correctional Facility. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the "officer having custody of the applicant shall be named as Respondent." Accordingly, the Court's substitution reflects Gary Hetzel, Warden of Easterling Correctional Facility, as the proper Respondent.

[2] The petition, briefs and other record submissions have been referred to the undersigned Magistrate Judge for an entry of report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 72.2(c)(4), and Rule 8 of the Rules Governing Section 2254 Cases.

petition, briefs and other record submissions, the undersigned finds that an evidentiary hearing is not warranted on the issues. See 28 U.S.C. § 2254(e)(2); Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1334-35 (11th Cir. 2004). Upon careful consideration, it is recommended that the petition be denied, that this action be **DISMISSED** and that judgment be entered in favor of Respondent, Gary Hetzel, and against Petitioner, Ethan Eugene Dorsey.

## I.   FACTUAL FINDINGS

The Alabama Court of Criminal Appeals found the facts of this case to be as follows:[3]

> On November 20, 1996, Brad Cary discovered the bodies of his father Richard Cary, Scott Williams, and T.C. [a minor] at Cary's Grocery store in Brooklyn, Alabama. All three had been shot. An autopsy revealed that [Richard] Cary died of a

---

[3] Because Dorsey filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). AEDPA directs that a presumption of correctness be afforded factual findings of state courts, "which may be rebutted only by clear and convincing evidence." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Id. (citing Sumner v. Mata, 449 U.S. 539, 547, 101 S. Ct. 764, 769, 66 L. Ed. 2d 722 (1981)). These facts are recited in the opinion of the Alabama Court of Criminal Appeals on Petitioner's direct appeal. See Dorsey v. State, 881 So. 2d 460, 471-72 (Ala. Crim. App. 2001), reversed in part, Ex parte Dorsey, 881 So. 2d 533 (Ala. 2003).

shotgun wound to the left side of his chest;
Williams died of a .25 caliber gunshot wound to his
head; and [T.C.] died of a .22 or .25 caliber
gunshot wound to his head. Approximately $300 and
a .357 revolver were missing from the store.
Dorsey's codefendant, Calvin Middleton, testified
concerning the events of November 20, 1996. He
said that he and Dorsey had planned to rob a
grocery store in Brooklyn. Dorsey got two guns,
sweaters, and gloves from his house. The two
parked a rented Dodge Acclaim automobile near an
abandoned house east of the store, put on hoods and
gloves, and walked to the store. Dorsey was armed
with a revolver and Middleton was carrying a
shotgun. The two entered the store with their guns
drawn. [Richard] Cary was behind the counter,
Williams was at the end of the counter close to the
back, and [T.C.] was leaning on the counter near
the front door. Middleton thought that [Richard]
Cary was looking for a gun so he told [Richard]
Cary to walk outside. He then told [Richard] Cary
to get on the ground. [Richard] Cary tried to grab
the gun and Middleton shot him in the chest.
Middleton testified that he then ran to the car
because he got scared. As he was running, he said,
he heard two more shots. Dorsey joined him at the
car. Middleton stated that Dorsey told him that he
had shot the man and boy because the boy started to
run. The two then drove to Yolanda Nelson's house
in Boykin. Dorsey and Middleton eventually ended
up at a nightclub in Opp, where they saw Rodney
Brooks.

Brooks corroborated Middleton's testimony. He said
that on November 20, 1996, he was riding around
with Dorsey and Middleton when Dorsey said that he
and Middleton were going to "hit a store" in
Brooklyn. He testified that they stopped at
Dorsey's house, that Dorsey went into the house,
and that he came out carrying a small caliber
revolver and a duffel bag. He said that Dorsey
asked him if he wanted to accompany them to "hit"
the store in Brooklyn. Brooks declined and asked
that he be dropped off at 8th Avenue in Andalusia.
Brooks also testified that he saw the two at a
nightclub in Opp later that same night. He said

that Middleton told him that he and Dorsey had "pulled some 187s" when they had hit the store in Brooklyn. He said that this was a slang expression, meaning that they had killed some people.

Brad Cary testified that on November 20, 1996, he was with his mother in their home directly across from Cary's store when he heard several gunshots. He thought that his father, Richard Cary, was shooting at animals. Several moments later he went to the store and saw his father's body. Brad Cary testified that he thought that his father, an avid practical joker, was playing a joke on him so he went back to the house, retrieved a gun, and fired a shot into the air. Brad testified that he then realized that his father and the others had been shot and went for help.

While confined in the Escambia County jail, Dorsey told a fellow inmate, Windell Jordan, that Middleton and he had been involved in a robbery that had "gone bad," and that he had shot a boy and that Middleton had shot one of the men with a shotgun.

A search of the area near the store revealed a twenty-dollar bill and a five-dollar bill in the grass near the pavement off County Road 6 -- an area consistent with where Middleton said he and Dorsey had parked the car. Two days after the murders a .357 revolver was found about 150 yards from the scene of the robbery-murders in the grass near County Road 6.

Dorsey's defense was that he did not commit the robbery-murders. He attempted to place the blame on Brad Cary.

Dorsey v. State, 881 So. 2d 460, 471-72 (Ala. Crim. App. 2001), reversed in part, Ex parte Dorsey, 881 So. 2d 533 (Ala. 2003).

On March 12, 1997, the Conecuh County Grand Jury returned a three-count indictment against Dorsey. (Doc. 15-11 at 2). Each

count charged Dorsey with capital murder pursuant to a different subsection of 13A-5-40(a), Ala. Code 1975. Count one charged Dorsey with killing Scott Williams, Richard Cary and T.C. during the course of a robbery, a violation of § 13A-5-40(a)(2), Ala. Code 1975. Count two charged Dorsey with killing two or more persons during one scheme or pursuant to one course of conduct, a violation of§ 13A-5-40(a)(10), Ala. Code 1975. Count Three charged Dorsey with the capital murder of T.C. because he was less than 14 years old at the time of his death, a violation of § 13A-5-40(a)(15), Ala. Code 1975. (Id.).

The trial was conducted, and the jury deliberated and twice returned verdicts before the trial court ultimately accepted the jury's verdicts convicting Dorsey of the lesser-included offense of the felony murder of Richard Cary under Count One, the lesser-included offense of the felony murder of Scott Williams under Count One, robbery under Count One, and the capital murder of T.C. as charged in Count Three of the indictment. (Id.). The jury, in an 11-1 vote, recommended that Dorsey be sentenced to life in prison without the possibility of parole for the capital murder conviction of T.C. (Id.). The trial court did not follow the jury's recommendation, but instead sentenced Dorsey to death. (Id.). The trial court also sentenced Dorsey to three consecutive terms of life imprisonment

for the two convictions for felony murder and the one robbery conviction. (Id.).

On direct appeal, the Alabama Court of Criminal Appeals affirmed the two felony murder convictions for Cary and Williams, but directed the trial court to vacate the robbery conviction and sentence because "[t]he underlying offense of robbery is encompassed in the two counts of felony murder." Dorsey 881 So. 2d at 513. The Court of Criminal appeals also remanded the case to the trial court with directions that it "correct its sentencing order to state the nonstatutuory mitigating circumstances that it found to exist and to state the reasons why he gave the jury's recommendation the consideration that he did." Id., 881 So. 2d at 523. When the case returned to the appellate court following remand, the Court of Criminal Appeals affirmed Dorsey's capital murder conviction for the murder of T.C. and his sentence of death. Id., 881 So.2d at 523 (opinion on return to remand).

On appeal to the Alabama Supreme Court, the Court affirmed Dorsey's two felony murder convictions for the deaths of Cary and Williams; however, the Alabama Supreme Court reversed the Court of Criminal Appeals' judgment affirming Dorsey's capital murder conviction for the death of T.C. under Count Three. Ex parte Dorsey, 881 So. 2d 533 (Ala. 2003). The Court reasoned

that when the jury returned its verdicts the second time and it convicted Dorsey of the lesser-included offense of felony murder of T.C. under Count One, the jury necessarily acquitted Dorsey of the greater offense of the capital murder of T.C. under Count Three of the indictment. Id.; Dorsey, 881 So. 2d at 538-39.

Pursuant to the Alabama Supreme Court's order of remand, the Court of Criminal Appeals reversed Dorsey's conviction for the capital murder of T.C. and remanded the case to the trial court. Dorsey v. State, 881 So. 2d 541 (Ala. Crim. App. 2003). On January 15, 2004, the trial court resentenced Dorsey to life imprisonment for the felony murder of T.C. and ordered the sentence to run consecutive to the two other life sentences that were previously imposed for the felony murder sentences of Cary and Williams. (Doc. 15-11 at 3).

On August 27, 2004, Dorsey filed a petition for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. Dorsey asserted numerous grounds for relief[4]. (Doc. 15-5 at 13-171). On April 14, 2005, the trial court conducted an evidentiary hearing to address Dorsey's claim of newly discovered evidence concerning the recanting of a

---

[4] On April 7, 2008, Dorsey filed an amended Rule 32 petition. (Doc. 15-6 at 255-263).

witness' testimony, alleged Brady violations for failure to disclose mistaken evidence at the time of Dorsey's arrest and the legality of Dorsey's sentence. (Doc. 15-6 at 81-82). At the hearing, Dorsey's claim of ineffective assistance of counsel due to his trial counsel's failure to object to the manner in which the court handled jury selection after a successful Batson challenge was also addressed. The court held that while the method[5] used by the court to "restrike" the jury following a successful Batson challenge was "unorthodox", and resulted in two of the three improperly stricken jurors being placed on the panel, defense counsel's agreement to that method did not rise to the level of ineffective assistance of counsel. (Id.). The trial court granted Dorsey relief on his claim that his sentence was illegal because he was given three life sentences under Count 1 of the indictment. The court resentenced Dorsey to one life sentence under count one of the indictment. (Doc. 15-6 at 82). The court denied Dorsey's other claims. (Id.).

---

[5] With the agreement of the prosecutor and defense counsel, the Court placed the names of the improperly stricken panel members along with the names of the remaining jurors in a group, and then drew the names randomly until the prescribed numbers were chosen. (Doc. 15-6 at 81-81). As noted, the result was that three of the four jurors who were the subject of the successful Batson challenge served on the jury while the fourth did not. (Id.).

On appeal, the Alabama Court of Criminal Appeals affirmed the trial court's decision resolving Dorsey's Rule 32 petition. Dorsey v. State, CR-08-0443, (Ala. Crim. App. Oct. 30, 2009) (mem. op) (Doc. 15-11). On November 20, 2009, the Alabama Court of Criminal Appeals denied Dorsey's application for rehearing. (Doc. 15-12). Subsequent thereto, the Alabama Supreme Court, on April 9, 2010, denied Dorsey's petition for writ of certiorari. (Doc. 15-14). On June 1, 2010, Dorsey commenced the instant action seeking habeas corpus relief. (Doc. 9).[6]

## II. ANALYSIS

### A. STANDARD OF REVIEW

Dorsey's federal habeas petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"). Under the highly deferential AEDPA standard, a federal court may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's determination "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

---

[6] Dorsey's petition was originally filed in the Middle District of Alabama, and was transferred to this Court in July 2010. (Doc. 7).

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also Harrington v. Richter, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011) ("Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision was contrary to federal law then clearly established in the holding of this Court, ... or that it involved an unreasonable application of such law ... or that it was based on an unreasonable determination of the facts in light of the record before the state court") (citations and internal quotation marks omitted).

What this means is that a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Greene v. Upton, 644 F.3d 1145, 1154 (11th Cir. 2011) (citation omitted). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington, 131 S. Ct. at 786-87. In other words, "if some

fair-minded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied. ... [T]he deference due is heavy and purposely presents a daunting standard for a habeas petitioner to clear." Loggins v. Thomas, 654 F.3d 1204, 1220 (11th Cir. 2011); see also Greene v. Fisher, 132 S. Ct. 38, 181 L. Ed. 2d 336 (2011) (AEDPA standard is purposely onerous because "federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice system, and not as a means of error correction") (citations and internal quotation marks omitted); Cullen v. Pinholster, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (AEDPA standard "is a difficult to meet ... and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (citations and internal quotation marks omitted).

Accordingly, in evaluating Dorsey's § 2254 Petition, the Court takes great care to abide by the stricture that "[a] federal court may not grant habeas relief on a claim a state court has rejected on the merits simply because the state court held a view different from its own." Hill v. Humphrey, 662 F.3d 1335, 1355 (11th Cir. 2011); see also Reese v. Secretary, Florida Dep't of Correction, 675 F.3d 1277, 1286, 2012 U.S. App. LEXIS 6501 (11th Cir. 2012) ("This inquiry is different from

determining whether we would decide _de novo_ that the petitioner's claim had merit."). Thus, the AEDPA presumes as correct all determinations of factual issues made by a state court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). Having established the proper standard of review, the Court turns to Dorsey's claims.

## B. PETITIONER'S CLAIMS

### 1. Batson Remedy

In ground one of his petition, Dorsey attacks his state conviction and sentence and argues that the trial court failed to provide a proper remedy after finding a _Batson_ violation; thus, the jury that convicted him did so in violation of his constitutional rights.[7] (Doc. 9 at 7). The record reflects that during jury selection, both sides raised _Batson_ challenges and the trial court determined that four of the prosecutors' preemptory strikes did, in fact, violate _Batson_. _Dorsey_, 881 So. 2d at 487. The following discussion then ensued between the Court and the attorneys for the parties:

---

[7] In _Batson v. Kentucky_, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the Supreme Court held that the prosecutor's race-based exercise of peremptory challenges was unconstitutional. 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

THE COURT:   Now the remedy I'm going to employ is this I'm going to take all thirty-nine cards and I'm going to take out the cards where there are proper strikes, put them in a pile, and I'm going to shuffle the cards and randomly select out of the middle one, two, three, four jurors

. . . .

All right.   There is a method of dealing with Batson which has not been formally codified or adopted as a rule, but, it makes sense and that is that you take out proper jurors, put them in a pile put everybody back in including the ones that were improperly struck and pull out enough to make the list.

MR. KING: We have no objection to that, Your Honor.

THE COURT:   Since the last strike of each aide was found to be all right, we'll leave the alternate selection as it was done originally.

MR. KING:   That's fine, Your Honor.

THE COURT:   Any objection by the State?

MR. CHAPMAN:   No, sir.

(Doc. 15-7 at 160-161, 186).

As detailed above, in order to remedy the Batson violation, the trial court, with the consent of counsel, separated out the venire members who were properly stricken from the remaining venire members, added the four panel members who were improperly stuck, and randomly selected twelve jurors and two alternates from this recomposed group.  As a result of this random process, three of the venire members who were improperly stuck by the

prosecution ended up serving on Dorsey's jury.[8] (Id. at 186-188).
Dorsey's attorney did not object to the trial court's remedy.

On appeal, Dorsey argued that the trial court improperly remedied the Batson violation. The Alabama Court of Criminal Appeals found that the remedy was appropriate to cure the Batson violation. Dorsey, 881 So. 2d at 489. In rejecting Dorsey's claim, the Alabama Court of Criminal Appeals observed as follows:

> Here, Dorsey specifically condoned the trial court's method of correcting the Batson violation. There is no evidence that the method the trial court used resulted in racial bias. Although our research revealed no case that has approved of this method of curing a Batson violation, neither did our research reveal any case that condemned this method.
>
> Moreover, the holding in Batson was premised on the conclusion that a juror's right to equal protection of the law was violated when that juror was removed based solely on his/her race. Here, the improperly removed jurors were included in a random drawing to select the final jury. This procedure cured an equal protection challenge that any of the impermissibly struck jurors had to the jury selection process. Thus, by removing the equal protection violation the trial court removed any perceived challenge to the integrity of the process.

_____

[8] While the trial court determined that the prosecution's strikes against venire members P. Finkley, M. Lee, K. Williams and S. Bowens could not withstand constitutional scrutiny, through the remedy employed by the Court, all four were returned to the venire panel, and Finkley, Lee and Williams were randomly selected to serve on Dorsey's panel. (Id. at 186-188).

Id. Based upon the record before the Court, the undersigned finds, as did the Alabama Court of the Appeals, that the trial judge properly cured the Batson violation. In addressing the proper remedy to be employed in addressing a Batson violation, the Eleventh Circuit has observed that:

> In Batson, the "Supreme Court made it clear that the fashioning of a remedy [for an unconstitutional strike] is a matter upon which [the lower] courts are to be accorded significant latitude." Koo v. McBride, 124 F.3d 869, 873 (7th Cir. 1997) (discussing Batson); see also McCrory v. Henderson, 82 F.3d 1243, 1247 (2d Cir. 1996) (holding that the Batson "error is remediable in any one of a number of ways"). As with the remedy for any constitutional violation, the lower courts are instructed simply "to take as [their] touchstone the basic proposition that the nature of the remedy must be determined by the nature and the scope of the constitutional violation." Koo, 124 F.3d at 873 (citing Milliken v. Bradley, 433 U.S. 267, 280, 97 S. Ct. 2749, 2757, 53 L. Ed. 2d 745 (1977)). Additionally, courts are encouraged to take into account the practicalities of the situation. Id. We review their chosen remedy only to see if they abused their discretion. See Batson, 476 U.S. at 99 n.24, 106 S. Ct. at 1725 n.24; Koo, 124 F.3d at 872.

> Although it declined to designate a specific remedy in Batson, the Supreme Court has suggested that reinstating an improperly struck juror is one of the remedies available to the trial courts. Batson, 476 U.S. at 99 n.24, 106 S. Ct. at 1725 n.24. In appropriate circumstances, we have accepted this remedy in this Circuit. See, e.g., Stewart, 65 F.3d at 922-23.

United States v. Walker, 490 F.3d 1282 (11th Cir. 2007).

In _Walker_, the defendants used all of their peremptory challenges to remove white male jurors. _Id._, 490 F.3d at 1289. The prosecution objected to the defendants' strikes, and after hearing the defendants' race-neutral explanations for the strikes, the district court disallowed four of them. The district court re-seated the jurors who had been improperly struck and did not allow the defendants to reuse the disallowed strikes. _Id._, 490 F.3d at 1290. The district court rationalized that re-seating the jurors placed the defendants in the position that they would have been in had they not improperly used their strikes, and that allowing them to exercise their four strikes again would have improperly rewarded them for violating _Batson_. _Id._, 490 F.3d at 1295. In reviewing the trial court's decision, the Eleventh Circuit noted that the Supreme Court has never stated whether a party should be allowed replacement strikes. _Id._ The court also stressed that lower courts have wide latitude to apply _Batson_. _Id._, 490 F.3d at 1294. The court upheld the district court's remedy, based on the district court's reasoning and the fact that the remaining members of the venire had already been discharged, so that allowing defendants additional strikes would have required another day of jury selection. _Id._, 490 F.3d at 1295.

Like the Eleventh Circuit, Alabama has never required that the trial court follow a certain procedure in remedying a Batson violation, but leaves the choice of the remedy to the sound discretion of the trial court. Dorsey, 881 So. 2d at 489; Ex parte Branch, 526 So. 2d 609 (Ala. 1987); O'Neal v. State, 602 So. 2d 462, 465 (Ala. Crim. App. 1992) (approving the Batson remedy of placing a juror who was improperly removed back on the venire).

In this case, the trial court, with the consent of counsel, placed all four of the improperly struck jurors back on the venire with the remaining jurors who had not been stricken, and randomly selected fourteen of the venire, with the first twelve serving as jurors and the last two serving as alternates. While Dorsey argues that the trial court's remedy resulted in only three of the four improperly excluded jurors being on his jury, he points to nothing in the random selection process that equates to a constitutional violation as all four of the improperly excluded jurors were returned to the general venire panel. Three of the four ended up on Dorsey's jury and the sole one who was not selected had an equal opportunity of being selected to serve. Thus, the trial court's remedy and appellate court's endorsement thereof were proper. In the absence of evidence that the remedy was inadequate to cure the violation,

this Court concludes that the Batson remedy, in which all four improperly excluded jurors were placed back on the venire, was appropriate under the circumstances.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### 2. Ineffective Assistance of Counsel and Batson Remedy

As his second ground for habeas relief, Dorsey argues that his trial counsel was ineffective because he failed to object to the excluded juror and he did not consult Dorsey before agreeing to the trial judge's court's proposed Batson violation remedy. (Doc. 9 at 7).

A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

18

prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Andrews v. Goodrich, 2012 U.S. Dist. LEXIS 150618, *28 (N.D. Ohio Sept. 13, 2012) (internal citations and quotations omitted). An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Mere "conclusory allegations of ineffective assistance [of counsel] are insufficient." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (quoting United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)).

The Eleventh Circuit has provided guidance in regards to the analysis of ineffective assistance of counsel claims:

When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate . . . Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in

> whether the adversarial process at trial...worked
> adequately. Therefore, the cases in which habeas
> petitioners can properly prevail on the ground of
> ineffective assistance of counsel are few and far
> between.

Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted); see also Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) quoting Strickland, 466 U.S. at 693 ("We recognize that '[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.'"); Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir. 1994) ("It is important to note that judicial scrutiny of an attorney's performance is appropriately highly deferential because the craft of trying cases is far from an exact science; in fact, it is replete with uncertainties and obligatory judgment calls."). This same standard applies whether the court is examining the performance of counsel at the trial or appellate level. See Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987).

As noted, Dorsey asserts that his counsel was ineffective because he did not object to the trial court's remedy of the Batson violation and he did not consult with Dorsey before agreeing to the remedy. In order to prevail on this assertion of error, Dorsey must prove both that his counsel's actions were deficient and that those deficient actions prejudiced his

defense. Strickland, 466 U.S. at 686. When applying the Strickland standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), cert. denied subnom. Oates v. Moore, 527 U.S. 1008, 119 S. Ct. 2347, 144 L. Ed. 2d 243 (1999); see also Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

Dorsey has failed to prove that his trial counsel's performance was deficient because he agreed with the Batson remedy proposed by the court. In rejecting this claim presented in Dorsey's appeal of the denial of his Rule 32 Petition, the Alabama Court of Criminal Appeals found, "Dorsey did not sufficiently prove that the trial court's remedy was inappropriate; thus, it necessarily follows that he did not prove that his counsel was deficient in not contesting the remedy." (Doc. 15-11 at 10). Indeed, Dorsey must have proven that "no reasonable lawyer, in the circumstances, would have" approved the trial court's remedy. Rogers, 13 F.3d at 386. As discussed supra, the purpose of a Batson remedy is to remove the equal protection violation associated when a juror is excluded

on the basis of race.  The Alabama Court of Criminal Appeals found that the judge's remedy "removed any perceived challenge to the integrity of the process." Dorsey, 881 So. 2d at 489. Because the improperly excluded jurors were placed back on the venire, and three of the four served on Dorsey's jury, this Court agrees that the trial court's remedy cured any equal protection violations.  Thus, under the circumstances, a reasonable lawyer would have approved of the procedure as it effectively cured the defects of the Batson violation.  As such, Dorsey has failed prove that his counsel's actions were deficient.

Additionally, Dorsey contends that his counsel was ineffective because he agreed to the Batson remedy without first consulting with him. (Doc. 9 at 7).  However, not only did the remedy cure the Batson violation, Dorsey has not established that he suffered any prejudice as a result of his counsel's failure to consult with him. See generally Lee v. Thomas, 2012 U.S. Dist. LEXIS 107328, * 55-57, 2012 WL 3137901, *9 (S.D. Ala., August 1, 2012) (finding that a petitioner must show prejudice, under the Strickland standard, in a counsel's failure to consult petitioner before engaging in a tactical strategy that is not unreasonable).

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### 3. Trial Court Prevented Presentation of Complete Defense

With respect to his third ground for habeas relief, Dorsey asserts that the trial court prevented him from presenting a complete defense because he was not allowed to present exculpatory evidence of another person's guilt. Dorsey has not proffered any facts in support of his claim, but the record reflects that he raised a similar argument before the state courts related to his attempt to solicit testimony suggesting that others had committed the murders, and his counsel's attempt to cross-examine Brad Cary, the son of one of the victims.

The admission of evidence pursuant to application of the Alabama Rules of Evidence involves the interpretation and application of state law by state courts. Federal habeas relief for state prisoners attacking their conviction is limited in scope:

> The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf
> of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in
> custody in violation of the Constitution or laws or
> treaties of the United States.

28 U.S.C. § 2254(a) (emphasis added). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of a constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). Questions of state law rarely have federal constitutional significance because "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). Such questions are reviewed in federal habeas proceedings only to determine whether the alleged errors rendered "the entire trial fundamentally unfair." Id.

In reviewing an evidentiary determination of a state trial court, the federal court will "not sit as a 'super' state supreme court.'" Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (citations omitted). In Shaw, the Eleventh Circuit explained:

> Unlike a state appellate court, we are not free to
> grant the petitioner relief simply because we
> believe the trial judge has erred. The scope of

our review is severely restricted. Indeed, the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence. A state evidentiary violation in and of itself does not support habeas corpus relief. Before such relief may be granted, the violation must rise to the level of a denial of "fundamental fairness."

In the context of state evidentiary rulings, the established standard of fundamental fairness is that habeas relief will be granted only if the state trial error was "material in the sense of a crucial, critical, highly significant factor." Moreover, application of this standard has been notably one sided, consistent with the reluctance of federal courts to second guess state evidentiary rulings. This court has established a well documented resistance to granting relief when a habeas petition alleges a federal claim based merely on a state evidentiary ruling.

Id. (internal citations omitted). Thus, Dorsey's third claim will be reviewed only to determine whether the alleged errors "render[ed] the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

### a. Proposed Testimony of Gary Henderson

In his direct appeal to the Alabama Court of Criminal Appeals, Dorsey argued that the trial court erred in not allowing Gary Henderson, another inmate, to testify that while incarcerated with Johnny Likely, Likely confessed that him and two others had committed the murders in question. Both Likely and Henderson were available to testify; however, defense counsel advised that in a statement to investigators Likely

25

denied any involvement in the murders and also denied making any statement to Henderson. The trial court advised that if Likely did in fact deny making the statement Henderson attributed to him and further denied involvement in the murders, Henderson's testimony as to what Likely told him would be admissible only for impeachment purposes and not as substantive evidence of another person's guilt. As a result, defense counsel elected not to call either Henderson nor Likely.

Dorsey argues that Likely's alleged statement to Henderson should have been allowed as substantive evidence that others committed the murders. The Alabama Court of Criminal Appeals observed that:

> The trial court, when ruling on the admissibility of the hearsay evidence, applied the law as it existed at the time of trial. Traditionally, Alabama courts had held that hearsay evidence concerning a third party's guilt is not admissible. See C. Gamble, McElroy's Alabama Evidence, § 48.01(4) (5th ed. 1996). See also Griffin v. State, 790 So. 2d 267 (Ala. Crim. App. 1999), rev'd, 790 So. 2d 351 (Ala. 2000).
>
>
> After Dorsey was convicted, the Alabama Supreme Court in Ex parte Griffin, supra, recognized that there may be situations when hearsay evidence of a third party's guilt is admissible against a claim that it violates the hearsay rule. The Supreme Court, relying on the United States Supreme Court's holding in Chambers v. Mississippi, supra, held that an accused's 'constitutional rights [in that

case] supersede[d] the hearsay rule in the
Alabama Rules of Evidence. 790 So .2d at 355.
…

In Ex parte Griffin, the accused sought to
introduce evidence that a third party had
pleaded guilty to the crime for which Griffin
was charged, that the plea was taken in an
Alabama court under oath, and that this
individual had served four years in prison
for the crime for which Griffin was on trial.
The Alabama Supreme Court, when holding that
this evidence was admissible, stated:

The United States Supreme Court has held that
a defendant has a right to put on a defense
and that that right includes the opportunity
to present evidence proving that another
person committed the offense for which he has
been charged. See Chambers v. Mississippi,
410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d
297 (1973); Washington v. Texas, 388 U.S. 14,
87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).
However, this right is not absolute; instead,
the trial court will have to consider the
admissibility of such evidence in conjunction
with other legitimate interests involved in
the trial process. Chambers, 410 U.S. at 295,
93 S. Ct. 1038; see also Guam v. Ignacio, 10
F.3d 608 (9th Cir. 1993). As a result, the
trial court is presented with a balancing
test in order to determine whether the
evidence of a third party's culpability is
properly admissible: The court must weigh the
defendant's strong interest in presenting
exculpatory evidence against the state's
interest in promoting reliable trials,
particularly in preventing the injection of
collateral issues into the trial through
unsupported speculation about the guilt of
another party. United States v. Johnson,
904 F. Supp. 1303, 1311 (M.D.Ala. 1995)
(citations omitted).
. . . .

27

> Three elements must exist before this
> evidence can be ruled admissible: (1) the
> evidence must relate to the res gestae of the
> crime; (2) the evidence must exclude the
> accused as a perpetrator of the offense; and
> (3) the evidence would have to be admissible
> if the third party was on trial. See Ex parte
> Walker, 623 So. 2d at 284, and Thomas, 539
> So. 2d at 394-96.

Dorsey, 881 So. 2d at 493-94.

The Alabama Court of Criminal Appeals held that the trial court did not err in ruling that Henderson's purposed testimony as to what Likely told him would be admissible only for the purpose of impeachment, not as substantive evidence of another person's guilt. According to the Court, "[t]here is no indicia of reliability in a statement made by one inmate to another inmate. . .[and] [t]here is absolutely nothing in the record that the statements bore such a degree of reliability that [a court] would depart from the long-standing rule regarding the exclusion of hearsay evidence." Id., 881 So. 2d at 496.

As noted by the Alabama Court of Criminal Appeals, the record reflects that Likely intended to deny inmate Henderson's assertion that while incarcerated together, Likely confessed to committing the murders in question with two others, and further intended to deny telling Henderson anything to the contrary. Aside from inmate Henderson's lone proposed testimony, Dorsey does not contend, and the record does not reveal that there was

28

anything else linking Likely to the murders. Thus, as determined by the Court of Criminal Appeals, Henderson's purported testimony lacked sufficient "indicia of reliability", and accordingly, would have been admissible solely as impeachment evidence. For these reasons, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### b. Cross Examination of Brad Cary

As noted supra, Dorsey has not proffered any facts in support of his claim that the trial court erred in preventing defense counsel from presenting evidence of the guilt of another. However, during his direct appeal to the Alabama Court of Criminal Appeals, Dorsey argued that the trial court erred in limiting defense counsel's cross-examination of Brad Cary, the son of victim Richard Cary, and in doing so, presented him from presenting a complete defense by showing that Brad Cary had a

motive to kill his father.  The Court of Criminal Appeals noted
that at trial, when defense counsel began to question Brad Cary
about whether marijuana was being grown on the property, the
trial court stated:

> That question does not tend to show that another
> person possessed a motived.  I'll disallow it at
> this time.  If you wish to call the witness back to
> the stand at a later time [you may do so] once you
> establish enough facts where that might be
> relevant." 881 So. 2d at 499.

The Court then noted that "motive evidence must be
buttressed with other evidence indicating that some other person
committed the crime. Id.

The Alabama Court of Criminal Appeals observed that motive
evidence is generally irrelevant without the presence of other
evidence indicating such other's guilt.  Based on the record
before it, the appeals court found that "the fact that one of
the victims, Richard Cary, was growing marijuana, did not,
alone, establish a motive for Brad to kill Richard Cary." Id.
Thus, the Court of Criminal Appeals held that the trial court
did not err in limiting the questioning of Brad Cary regarding
the presence of marijuana on the property.

Based upon a careful review of the record, the Court agrees
with the Alabama Court of Criminal Appeals, for the reasons
stated in its opinion, that the trial court did not err in

excluding this line of questioning.  The record reflects that pursuant to the trial court's ruling, Dorsey reserved the right to pursue the line of questioning (regarding marijuana on the property) upon the presentation of corroborating evidence.  The record further reflects that Dorsey never presented "other evidence" that buttressed his motive evidence, nor has he pointed to any such evidence in the record.  Thus, the undersigned finds that the trial court did not err in excluding the line of questioning and that the appellate court did not err in rejecting this claim of error.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair.  Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### 4. Prosecutorial Misconduct

Set forth in ground four of Dorsey's habeas petition is his assertion that there was extensive prosecutorial misconduct.

(Doc. 9 at 9). Dorsey asserts that (1) the prosecutor improperly committed on his silence; (2) the prosecutor argued facts not in evidence; (3) the prosecutor vouched for state witnesses and (4) the prosecutor attacked defense counsel. (Id.). "To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." Spencer v. Secretary, Dep't of Corrections, 609 F.3d 1170, 1182 (11th Cir. 2010) (citation omitted). The Supreme Court has determined that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (citing Darden v. Wainwright, 699 F.2d 1031, 1036 (11th Cir. 1983)). The relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 94 S. Ct. 1868, 1871, 40 L. Ed. 2d 431 (1974).

More generally, "[p]rosecutorial misconduct is a basis for reversing an appellant's conviction only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused." United States v. Cordoba-Mosquera, 212 F.3d 1194, 1198

(11th Cir. 2000) (citation omitted).   Thus, the appropriate
standard of review for such a claim on writ of habeas corpus is
"the narrow one of due process, and not the broad exercise of
supervisory power." Donnelly, 416 U.S. at 642.

### a. Comments on Dorsey's Silence

Here   again,   while   Dorsey   has   alleged   extensive
prosecutorial misconduct, he has offered no supporting facts in
his petition.   However, in his appeal before the appellate
court, Dorsey points to two instances during the guilt phase of
the trial in which the prosecutor improperly commented on his
silence.   It is true, of course, that prosecutors are prohibited
from commenting on a defendant's exercise of his Fifth Amendment
privilege. See, e.g., Bernal-Benitez, 594 F.3d 1303, 1315 (11th
Cir. 2010) ("Nor may the prosecution comment on the defendant's
failure to testify."); United States v. Knowles, 66 F.3d 1146,
1162 (11th Cir. 1995) ("The Fifth Amendment prohibits a
prosecutor from commenting directly or indirectly on a
defendant's failure to testify.") (citation omitted).   "A
prosecutor's statement violates the defendant's right to remain
silent if either (1) the statement was manifestly intended to be
a comment on the defendant's failure to testify; or (2) the
statement was of such a character that a jury would naturally
and necessarily take it to be a comment on the failure of the

33

accused to testify." Isaacs v. Head, 300 F.3d 1232, 1270 (11th Cir. 2002) (citation omitted). "The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so." Id.

On appeal, Dorsey cited two prosecutorial statements that were violative of his right to remain silent. First, during the guilt phase of the trial, the prosecutor, in his closing rebuttal, stated as follows:

> Now what about the bump on the back of Richard's head? First of all, Richard's lying on his head. So, when he got around there he could have fell and got that bump or he could have got around there as Ethan was coming out that door and Ethan could have popped him. Remember Calvin is already gone. And by then all the wit- nesses are dead or going to be dead. They kill all the witnesses. They kill all the witnesses. And they almost got away with it except Calvin goes back and starts telling his buddy, Rod, Rodney.

Dorsey, 881 So. 2d at 503. The Alabama Court of Criminal Appeals found that this comment could not reasonably be viewed as a comment on Dorsey's failure to testify. Id. The appeals court held that it was instead "a response to an argument made by defense counsel to the effect that the State failed to explain the bump on Richard Cary's head." Id. In so finding, the appeals court observed that "[c]ertainly, the State is free to argue all legitimate inferences and to respond to counsel's

34

arguments and questions." Id.  The Court agrees with the Alabama Court of Criminal Appeals that this statement was neither manifestly intended as a comment on Dorsey failure to testify, nor was it of such a character that a jury would have naturally and necessarily perceived it that way.  Thus, Dorsey's objection to the state court's resolution of this issue is meritless.

The same goes for the second statement relied upon by Dorsey.  During the prosecutor's closing rebuttal argument in the guilt phase of the trial, the prosecutor stated that "So, ladies and gentlemen of the jury, you can go back and look around and think about this case a little bit and you can think about two or three things; one, the defense didn't explain to you how it happened.  I'm telling you how it happened." Id.  The Alabama Court of Criminal Appeals found, that "[t]he prosecutor's statement[] regarding the lack of testimony. . .was permissible. Id. (quoting Miles v. State, 715 So. 2d 913, 917 (Ala. Crim. App. 1997)).  The appeals court further observed that in "an effort to meet the prosecutor's own burden of proof by commenting on the lack of evidence, it is permissible for the prosecutor to ask the jury to draw inferences from the lack of evidence as well as from the evidence presented." Dorsey, 881 So. 2d at 503 (citing Davis v. State, 274 So. 2d 363 (1973)).  In addition, the appeals court noted that trial court "thoroughly

instructed the jury, several times in its lengthy charge, that the State had the sole burden of proving [Dorsey's] guilt beyond a reasonable doubt." Dorsey, 881 So. 2d at 503.

Upon review, the Court finds that the record does not support a conclusion that the statement either was manifestly intended to be a comment on Dorsey's silence, or that the jury necessarily would have interpreted the remark in that fashion. This is particularly true given the extensive instructions given by the trial court that emphasized the fact that the State had the burden of proof. Thus, this statement did not violate Dorsey's right to remain silent.

Accordingly, for these reasons, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, his claim that his constitutional rights were violated is without merit.

## b. Comments on Facts Not in Evidence

Dorsey also asserts that the prosecutor argued facts not in evidence.  On appeal, Dorsey relied upon the following comments by the prosecutor to support his assertion:

> He [defense counsel] got up here and talked to you about a man being turned loose on death row because one of you jurors said that he was there when it happened.  And he made a big point out of that so he could get one juror's attention.  That's the kind of con you've been listening to.  Now let's get it straight right now.  I asked the Judge if I could reply in kind.  I don't think that anybody ought to be framed, ladies and gentle-men of the jury. You don't either.  I was the one that re-opened that case for that man on death row.  And I'm the one that filed the motion that got him dismissed.

Dorsey, 881 So. 2d at 505.  The Alabama Court of Criminal Appeals founds as follows:

> As is evidenced by the opening portion of the above argument, this argument was a reply in kind to an argument by defense counsel.  Defense counsel argued in his closing argument:
>
> 'We asked you about people being wrongfully accused. One of the jurors actually responded, had a man on death row, somebody had testified against him and came back and said, you know what, I lied. Down there six years, folks-
>
> . . .
>
> He was down there six years, folks.  Man that was charged with the same kind-crime.  Went in trial-went in trial and said me and him went and did it. Me and him went and did it.  Actual case in the State of Alabama.  Not somewhere out in California

or just in my make believe possibility world, happened here. Sat on death row for six years.'

The prosecutor's remarks were directed to the remarks made by defense counsel and were proper, given defense counsel's argument. As we stated in Chatom v. State, 619 So. 2d 222, 224-25 (Ala. Crim. App. 1993), 'When the door is opened by defense counsel's argument, it swings wide, and a number of areas barred to prosecutorial comment will suddenly be subject to reply.' Davis v. State, 494 So. 2d 851, 855 (Ala. Cr. App. 1986). This court in Stephens v. State, 580 So. 2d 11 (Ala. Cr. App. 1990), aff'd, 580 So. 2d 26 (Ala.), cert. denied, 502 U.S. 859, 112 S. Ct. 176, 116 L. Ed. 2d 138 (1991), stated the following with regard to a prosecutor's statements in arguments:

...[I]t must be examined in its context and in light of what had transpired, that is, in light of preceding argument of defense counsel, to which the prosecutor's argument was an answer.' Washington v. State, 259 Ala. 104, 65 So. 2d 704 (1953); Gibson v. State, 347 So. 2d 576 (Ala. Crim. App. 1977); Rutledge v. State, [482 So. 2d 1250] (Ala. Crim. App. 1983). The rule in Alabama is that 'remarks or comments of the prosecuting attorney, including those which might otherwise be improper, are not grounds for reversal when they are invited, provoked, or occasioned by accused's counsel and are in reply to or retaliation for his acts and statements.' Shewbart v. State, 33 Ala. App. 195, 32 So. 2d 241, cert. denied, 249 Ala. 572, 2 So. 2d 244 (1947); Camper v. State, 384 So. 2d 637 (Ala. Cr. App. 1980); Wilder v. State, 401 So. 2d 167 (Ala. 1981), cert. denied, 454 U.S. 1057, 102 S. Ct. 606, 70 L. Ed. 2d 595 (1981); Miller v. State, 431 So. 2d 586 (Ala. Crim. App. 1983); Rutledge, supra.' Stephens, 580 So. 2d at 21, (quoting Henderson v. State, 460 So. 2d 331, 333 (Ala. Cr. App. 1984). See also Williams v. State, 601 So. 2d 1062, 1074 (Ala. Cr. App. 1991).'

Dorsey, 881 So. 2d at 505-06 (internal quotations omitted).

The issue of whether the trial court erred in permitting the prosecutor to comment on facts not in evidence involves the interpretation and application of state law by state courts. Thus, on habeas review, this issue is reviewed solely to determine whether the alleged state trial error was "material in the sense of a crucial, critical, highly significant factor," Shaw, 695 F.2d at 530, which rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals, for the precise reasons stated in its opinion, that Dorsey's counsel opened the door to the comments in his efforts to persuade the jury to find Dorsey not guilty. Thus, given the context in which the prosecutor's comments were made, they do not establish ground for reversal. Moreover, the comments were not material in the trial and did not "render[ ] the entire trial fundamentally unfair." Id.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law,

<u>see</u> 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair.  Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### c. Vouching for State's Witnesses

Additionally, Dorsey asserts that the prosecutor improperly vouched for the credibility of the State's witnesses.  Before the state courts, Dorsey asserted as follows:

> For Calvin Middleton, Jr. (Dorsey's purported accomplice and the state's key witness): 'Now use your common sense.  Is he going to get up here and tell a lie on Ethan Dorsey just so he can go to the peiritentiary (sic) for the rest of his life.  I submit to you that's ludicrous.... You know that doesn't make sense.' (R. 1954-1955) (emphasis supplied) Mr. Middleton's purported truthfulness was again emphasized: 'In this case, there is no reason to lie. Rodney had no reason to lie.  Calvin [Middleton] had no reason to lie.  Why would he lie?  There is no reason.' (R. 1960-1) (emphasis supplied) And still later, the district attorney returned to the subject of Mr. Middleton's truthfulness, and asserted that Mr. Middleton's truthfulness, taken alone, was sufficient to establish that Mr. Dorsey committed the offense: 'There is no reason not to believe what he says. And if you believe he was there.... then you cannot help but also believe that Ethan Dorsey was the other person there.' (R. 1963-1964.)
>
> For Rodney Brooks (a early suspect in the case who then gave the state favorable testimony): 'Why would Calvin – why would Rodney [Brooks] lie for Calvin?  There's no reason to.  Use your common sense about that.' (R. 1960.)

> For Windell Jordan (the jailhouse snitch with five
> felony convictions): 'He has no incentive, no
> reason to tell Ethan Dorsey, other than wanting to
> tell the truth. Why would he make up a story like
> this?' (R. 1956.)
>
> For Matrice Ball, Yolanda Nelson, and Lynn Rodgers
> (friends of Mr. Dorsey whom he visited that
> evening): 'Now they don't have any reason to tell
> you anything but the truth.' (R. 1961.)
>
> For Warren Stewart, Ron Bankston, Freddie Reeves,
> Dan Watson, Simon Benson, Larry Ikner, and Kenneth
> Ausby (investigators who worked the case): 'I'm
> here as the district attorney in this case and I've
> been involved in this case from the very beginning.
> And these fine law enforcement officers, they did
> talk to witnesses for two and a half months they
> worked this case till they made an arrest.' (R.
> 2107) This argument is perhaps the most improper,
> for the district attorney – by invoking these
> people as working for him – directly placed his own
> credibility and quality of investigation into
> consideration.
>
> For B[rad] C[ary] (Richard Cary's son and a suspect
> in the case): 'couldn't have been over at the house
> shooting that shot unless he were telling you the
> truth'(R. 2113.)

(Doc. 15-5 at 133-32). Without discussing any of the statements

individually, the Alabama Court of Criminal Appeals ruled that

upon evaluation of the comments cited by Dorsey, there was "no

impermissible argument." Dorsey, 881 So. 2d at 504. In

addition, the court found that the "prosecutor's remarks were

grounded on the witnesses' testimony; the prosecutor was not

attempting to personally vouch for them." Id.

As with the previous claim, the issue of whether the trial court erred in permitting the prosecutor to make these comments involves the interpretation and application of state law by state courts. Thus, on habeas review, this Court's review of such claims is limited to whether the alleged state trial error was "material in the sense of a crucial, critical, highly significant factor," Shaw, 695 F.2d at 530, and rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

Assuming arguendo, that it was error for the trial court to permit these comments, the record does not support a finding that such error prejudiced the outcome of Dorsey's trial and deprived him of fundamental fairness. In fact, the record reflects that the evidence against Dorsey was so overwhelming that the prosecutor's alleged errors were not so crucial that they rendered the trial fundamentally unfair. For example, during trial, Dorsey's alleged accomplice, Calvin Middleton, provided very extensive, detailed knowledge of the murders and Dorsey's involvement therein. Specifically, he testified that Dorsey picked him up in a vehicle on the morning of the murders (Doc. 15-6 at 167), that they traveled to pick up Rodney Brooks (id. at 178-79), and that Dorsey drove them to his own home and "got some guns" because they were "[g]oing to rob somebody."

(Id. at 180).  Additionally, Middleton testified that Dorsey told him that the two of them were going to "Cary's Grocery Store" to "get some money." (Id.).  Middleton elaborated that the two retrieved a revolver, a pistol, and "a sawed off shotgun" from Dorsey's closet, as well as two "hoodies", two pair of gloves, and a duffle bag from Dorsey's home. (Id. at 181-82).

Middleton further stated that when both men returned to the car they asked Brooks if he wanted to join them as they went "down to Brooklyn to rob someone" and Brooks declined and left the car. (Id. at 183-84).  Next, according to Middleton, Dorsey drove to an abandoned house and both men walked towards the store.  Both men were wearing "hoodies" and gloves and carrying loaded weapons. (Id. at 187-89).  Middleton carried the shotgun and Dorsey carried the revolver. (Id. at 188-89).  Middleton continued by describing the robbery in which the two men entered the store with their guns drawn and ordered the three victims to remain still.  At some point, Middleton took Mr. Cary out to the back of the store because he became "fidgety".  At which time, a struggle ensued between the two of them and Middleton claimed his "gun went off", killing Mr. Cary. (Id. at 194-96).  He immediately took off running towards the car and heard two gunshots. (Id. at 197).  After a pause, he heard a third shot.

(Id.).   Next, he saw Dorsey at the car with the pistol still in
his hands. (Id. at 198).   As the two men fled the scene, Dorsey
confessed to Middleton that he shot both victims "because the
little boy tried to run." (Id. at 200; Doc. 15-7 at 1).
According to Middleton, Dorsey also told him that he had
retrieved less than $200 from the robbery. (Doc. 15-7 at 2).
Middleton admitted that he saw the money shortly thereafter at
"some girl's trailer". (Id.).

Middleton further testified that the two went to a
nightclub in Opp later that night and ran into Rodney Brooks,
who had left the car shortly before the robbery and murders.
(Id. at 7).   According to Middleton, he confessed to Brooks that
the two had "pulled some 187s", which Middleton testified means
"murder". (Id. at 8).   Middleton concluded his testimony by
admitting that he and Dorsey had used the money "[f]rom the
store" to purchase cocaine later that night. (Id.).

Middleton's testimony was corroborated by several sources.
Rodney Brooks testified that he was with Middleton and Dorsey
prior to the robbery and murders.   Brooks confirmed that Dorsey
and Middleton went into Dorsey's house and returned with a black
bag, pistol, and a sawed off shotgun. (Id. at 92).   Brooks also
testified that the men told him that they were going "to hit a
store in Brooklyn" (id.) and that he declined to participate

(id. at 93). Brooks further testified that he saw Dorsey and Middleton at a nightclub later that same night and that Middleton confessed that they had "pulled some 187s", which Brooks testified meant "killed some people" (id. at 97), and that they had only retrieved "small change" (id. at 98).

In addition, the state called Windell Jordan, a fellow inmate of Dorsey's, who testified that prior to trial, Dorsey confessed to him that he was involved in a robbery that had "gone bad" and that he had closed his eyes and shot the young boy. Dorsey, 881 So. 2d at 520. In addition, searches of the area near the store revealed money, which was found in the grass in an area consistent with where Middleton said he and Dorsey had parked the car, and a .357 revolver, which was found about 150 yards from the scene of the robbery and murders. Id., 881 So. 2d at 472.

Thus, the evidence of Dorsey's guilt in this case was so overwhelming that even if the prosecutor did, in fact, improperly vouch for the credibility of the state's witnesses, the alleged misconduct did not prejudice the outcome of the trial such that Dorsey was deprived of a fair trial. Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C.

§ 2254(d)(2), that the Alabama Court of Criminal Appeals
rendered a decision that is neither contrary to, nor an
unreasonable application of, clearly established federal law,
see 28 U.S.C. § 2254(d)(1), and that such alleged error did not
render Dorsey's entire trial fundamentally unfair. Therefore,
Dorsey's claim that his constitutional rights were violated is
without merit.

### d. Comments Attacking Defense Counsel

Additionally, Dorsey asserts prosecutor engaged in
misconduct because some of his comments that improperly attacked
defense counsel. In his arguments before the State courts,
Dorsey cited the following instances in which the Prosecutor, in
his final closing argument, allegedly attacked defense counsel:

> And its real serious business when someone stands
> up here in front of you and accuses your law
> enforcement officers of planting this evidence,
> framing folks, making up evidence, making people
> lie. And I want to get that cleared out of this
> courtroom where everybody can get it straight. You
> have been conned, ladies and gentleman of the jury,
> worse than anybody has ever been since Judas told
> Jesus that he never would betray him. Conned. And
> I'll point out to you how you've been conned.
>
> …
>
> Are you going to fall for that? Conned. Con job.
> Slick talking.
>
> Excuse me for raising my voice, but, I'm going to
> raise it some more because it ain't right, ladies
> and gentleman of the jury, for a killer to walk

free because a lawyer walks in this courtroom and cons you. It ain't right.

And you need to get yourself in the right mind now. I ask you to give me just a few minutes to listen, to listen about this case.

…

Let's talk about Brad.  What was his motive?  What in the world did you hear one thing up here that said that Brad had a motive to kill his daddy?  How low down can you get?  How low down can you get to come in this courtroom and say that little boy would kill his daddy?

…

Why would Mrs. Cary lie?  My God, if you believe that – all this crap they've thrown at you about Brad has got any real truth, then, Mrs. Cary's in on it.  My Lord.  What a preposterous thought. What is this world coming to?  What is our justice system coming to, when we can have trials like this with this kind of silliness can be thrown at you.

…

You want to know how quick they can con you, how quick they can trick you?  Look at that last thing that was over here on the board.  This is how the game is played, because it's a game there.  It doesn't matter about the truth, you just play a game, you just try to get your client off.

…

They try to put words in her mouth, they tried to put times in her mouth, they tried to con you with that. It's a quick, slick game.  Let's just get up and say three or four things real quick like and it'll get right by you.  Let's don't pay any attention to the evidence.

(Doc. 15-5 at 132-34) (emphasis in original). In rejecting
Dorsey's claim, the Alabama Court of Criminal Appeals ruled:

> As we stated in Whitlow v. State, 509 So. 2d 252,
> 257 (Ala. Crim. App. 1987):
>
> Disparagement of counsel for the accused is never
> proper and has no place in any trial of any case.
> 23A C.J.S. Criminal Law, § 1090 (1961); Thomas v.
> State, 393 So. 2d 504 (Ala. Crim. App. 1981). A
> prosecutor may strike 'hard blows,' but not 'foul
> blows.' Berger v. United States, 295 U.S. 78, 55 S.
> Ct. 629, 79 L. Ed. 1314 (1935); Crosslin v. State,
> 446 So. 2d 675 (Ala. Cr. App. 1983). 'An attack on
> opposing counsel should be distinguished from a
> verbal assault on the accused.' Thomas, 393 So. 2d
> at 509. 'The range of a prosecutor's remarks has
> an important bearing on the extent of their
> impropriety. When he confines himself to an attack
> on opposing counsel personally, his remarks may
> expose him to censure by the court or discipline by
> the bar association, but will not usually be held
> prejudicial to the accused's right to a fair
> trial.' 99 A.L.R.2d 528 (1965); Thomas v. State,
> supra; Hurt v. State, 361 So. 2d 1163 (Ala. Cr.
> App. 1978). In this case, we interpret the
> prosecutor's words as an effort to bolster his case
> by demeaning opposing counsel in saying that
> counsel is displaying false emotions before the
> jury. The prosecutor in fact is accusing defense
> counsel of intellectual dishonesty. 'We do not
> condone the vituperative remarks made by the
> prosecutor. On the contrary, we condemn such
> remarks and the conduct of the prosecutor as being
> unworthy of his role as a prosecuting attorney.'
> Scroggins v. State, 341 So. 2d 967, 971 (Ala. Cr.
> App. 1976), cert. denied, 341 So. 2d 972 (Ala.
> 1977). The comment in this case, directed solely
> at appellant's counsel, was not prejudicial to the
> point of reversal.
>
> While we do not condone these comments, we find no
> reversible error here. See Whitlow.

As with the previous assignment of error, the issue of whether the trial court erred in permitting the prosecutor to make these comments involves the interpretation and application of state law by state courts. Thus, on habeas review, this Court is limited to determining whether the alleged state trial error was "material in the sense of a crucial, critical, highly significant factor," Shaw, 695 F.2d at 530, and rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

Like the appeals court, this Court does not condone the prosecutor's comments at issue; however, the comments did not prejudice the outcome of the case and deprive Dorsey of a fair trial. As discussed supra, the evidence of Dorsey's guilt in this case was so overwhelming that the unprofessional comments by the prosecutor did not have a material affect on the outcome of the trial. Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore,

Dorsey's claim that his constitutional rights were violated is without merit.

### 5. Failure to Instruct Jury on Lesser-Included Offense of Manslaughter

In Ground five of Dorsey's habeas petition, he alleges that the trial court erred in refusing to charge the jury on the lesser-included offense of reckless manslaughter. (Doc. 9 at 15). Under Alabama law, "a trial court should instruct the jury on a lesser offense if there is a reasonable theory from the evidence to support that lesser offense." Dorsey, 881 So. 2d at 515 (quoting Jones v. State, 753 So. 2d 1174, 1189 (Ala. Crim. App. 1999)). However, the court has "traditionally held that when a requested jury instruction is inconsistent with the defense strategy there is no error in the failure to give such an instruction." Id., 881 So. 2d at 514.

The Alabama Court of Criminal Appeals found that Dorsey was not entitled to the requested jury instruction as "[t]here was no evidence presented that Dorsey recklessly committed the acts charged in the indictment." Id. Indeed, at trial, the State presented overwhelming evidence that Dorsey and Middleton planned an armed robbery, which resulted in the murders of the three victims. In addition, and as found by the trial court, Dorsey claimed that he did not commit the murders and attempted to place blame on the victim's son. Thus, neither the defense

theory nor the overwhelming evidence adduced at trial supported a finding that Dorsey's actions were merely "reckless" or "triggered by 'sufficient provocation'" as required to prove manslaughter under Alabama law. Thus, the trial court's decision not to instruct the jury on reckless manslaughter was entirely valid and proper. In turn, the Alabama Court of Criminal Appeals' conclusion that the evidence did not support the requested instruction, see id., 881 So. 2d at 514-15, was not unreasonable and, indeed, was not erroneous at all.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### 6. Improper Prosecutorial Promise Concerning Co-Defendant

In ground six of his habeas petition, Dorsey contends that the prosecutor made improper promises concerning his co-defendant, Calvin Middleton. (Doc. 9 at 16). Dorsey has offered

no facts in support of this contention, however, in his appeal before the Alabama Court of Criminal Appeals, he argued that in closing, the prosecutor improperly argued to the jury that Middleton would be tried for capital murder, that his confession would be used against him, that he would be convicted and would spend the rest of his life in prison, and that he would be taken out in a pine box. Dorsey, 881 So. 2d at 507. The appeals court examined Middleton's testimony regarding his agreement with the State, as well as the closing statements made by both the prosecutor and Dorsey's counsel, and concluded that Dorsey's counsel had opened the door for the prosecutor's rebuttal comments. According to the appeals court, Dorsey's counsel had suggested to the jury that Middleton was motivated to offer false testimony in hopes that the State would reward him with lesser charges or probation, and that under those circumstances, the prosecutor was entitled to offer a response to the assertion by defense counsel. Id., 881 So. 2d at 507. Thus, the prosecutor's comments were not improper.

As with many of Dorsey's other claims, the issue of whether the trial court erred in permitting the prosecutor to make such comments concerning the future prosecution of Dorsey's accomplice involves the interpretation and application of state law by state courts. Thus, on habeas review, the Court's review

is limited to determining whether the alleged state trial error was "material in the sense of a crucial, critical, highly significant factor," Shaw, 695 F.2d at 530, and rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

As found by the appeals court, when the prosecutor's comments are viewed in the proper context, it is clear that he was directly responding to defense counsel's suggestion that Middleton, Dorsey's co-defendant and chief accuser, was motivated to lie because he was hoping to be rewarded with reduced charges or probation. Under these circumstances, the prosecutor's comments were not improper. Further, even if the comments had been found to be improper, the record does not support a finding that comments prejudiced the outcome of Dorsey's trial and deprived him of fundamental fairness. As discussed supra, not only did Middleton confess to his involvement and implicate Dorsey in the murders, but the state also offered additional evidence that corroborated Middleton's confession.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals

rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### 7. Improper Jury Instructions

In ground seven of his habeas petition, Dorsey argues that the trial court's jury instructions were flawed for several reasons. (Doc. 9 at 17). Each of these alleged errors involves the interpretation and application of state law by state courts. Therefore, as with the state law issues discussed above, federal review of the propriety of jury instructions from a state trial is very limited. See Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997) ("Our limited role on habeas review, when faced with a challenge to a state law jury charge, is to determine whether any error or omission in the jury charge was so prejudicial as to amount to a violation of due process.") (citing Carrizales, 699 F.2d at 1055). "A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair." Id.

Dorsey lists five allegedly erroneous jury instructions given by the trial court. According to Dorsey, the trial court: a) improperly instructed the jury on the burden of proof, b) denigrated the lesser-included offenses, c) improperly instructed jury on when the jury may disregard the testimony of state witnesses, d) improperly instructed jury on how to consider the weight of Dorsey's statements although he did not testify at trial, and e) improperly instructed the jury using examples from the state's case.

### a. Burden of Proof

Dorsey asserts that the trial court improperly shifted the burden of proof thereby requiring him to prove his innocence. Before the state courts, Dorsey asserted that "'[t]he trial court improperly instructed the jury that their obligation was to determine "what the true facts of the case are.'"" (Doc. 15-5 at 107). The trial court and the appeals court rejected Dorsey's claim and found that the jury instruction was not improper. Indeed, the record shows that the trial court went out of its way to instruct the jury that the burden of proof was always with the State, and burden never shifted to Dorsey to establish his innocence or disprove the facts tending to

establish guilt.[9] Id.   Although Dorsey contends that the trial

court improperly shifted the burden by informing the jury that

they were the fact-finders, he fails to show how the inclusion

of that language was erroneous or otherwise improper.

Moreover, Dorsey has not and cannot show that the jury

instruction rendered his entire trial fundamentally unfair.

Accordingly, the Court finds that the decision of the Alabama

Court of Criminal Appeals was a reasonable determination of the

facts in light of the evidence presented, see 28 U.S.C.

---

[9] In its instructions to the jury, the trial court stated,
in pertinent part, as follows:

> 'Now the defendant, for his plea, and in answer to
> the indictment says that he is not guilty.  **This
> places upon the prosecution the burden of proving
> his guilt beyond a reasonable doubt.   The burden
> never rests upon the defendant to establish his
> innocence nor to disprove the facts tending to
> establish his guilt.** . . . ;

> '**I've already explained to you that the burden is
> upon the State to prove the defendant guilty as
> charged.**  Before a conviction can be had in this
> case the Sate must satisfy each and every member of
> the jury of the defendant's guilt beyond a
> reasonable doubt.  Even if the State demonstrates a
> probability of guilt, if it does not establish
> guilt beyond a reasonable doubt you must acquit the
> defendant.

Dorsey, 881 So. 2d at 516 (Emphasis added).

§ 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### b. Lesser Included Offenses

Dorsey next argues that the trial court "denigrated" the lesser offenses. (Doc. 9 at 17). Dorsey again offers no facts in support of his argument; however, before the state courts, he argued that the trial court gave erroneous instructions when instructing one of the jury panels during voir dire. The record reflects that when the trial court was giving the preliminary instructions about a death-penalty case to one of the venire panels, the trial court stated:

> The defendant -- If the jury finds the defendant not guilty of a capital offense or **finds the defendant guilty of a lesser included offense which is not guilty** or if the jury finds him not guilty of any charge, then the jury will be discharged. If he's found guilty of a noncapital offense then he would be sentenced by the judge at a later sentencing hearing. But, if the jury finds the defendant guilty, beyond a reasonable doubt, of a capital offense, in that event, a second phase of the trial is begun called the punishment phase.

Dorsey, 881 So. 2d at 517 (emphasis added).  With respect to this instruction, the Alabama Court of Appeals found that, "[c]learly, this comment was a[n] inadvertent slip of the tongue.  ***This remark was not in the court's jury instructions***. The trial court gave very thorough and explicit instructions on the lesser included offenses." Id. (emphasis added).  The Court also noted in passing that while the trial court had erred in giving a lesser-included instruction for felony murder under Count II, the error was harmless because no verdict was accepted on Count II.

As found by the appeals court, the remark was clearly an inadvertent slip of the tongue by the trial court during jury selection, and it was not included in the court's final instructions to the jury.  Thus, the undersigned finds that when the error is considered in the context of the court's entire final instructions to the jury and of the proceedings as a whole, it did not prejudice Dorsey in violation of his due process rights.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an

58

unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that said error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### c. Testimony of State's Witnesses

Next, Dorsey argues that the trial court improperly instructed the jury that they may disregard the testimony of state witnesses. (Doc. 9 at 17). Before the state courts, Dorsey attacked the following jury instruction by the trial court as being improper:

> You may also consider whether a witness has been contradicted, and such contradiction, if any there was, would be considered by you in determining the weight to give the testimony of that witness. Mere contradiction alone would not authorize you to disregard the testimony completely. But, should you find that a witness has testified falsely and done so intentionally, as to a material fact, then, as to that witness, you may disregard his or her entire testimony if you see fit to do so. You do not have to do that, but, you may in your discretion, do so.

Dorsey, 881 So. 2d at 517-18. In rejecting Dorsey's claim, the Alabama Court of Appeals found that several Alabama appellate courts have upheld "substantially similar" instructions. Id., 881 So. 2d at 518 (citations omitted).

As determined by the appeals court, the undersigned finds that the jury instruction was a correct statement of the law. See Freeman v. State, 722 So. 2d 806 (Ala. Crim. App. 1998). Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### d. Weight of Petitioner's Statements

Dorsey contends that the trial court erred by improperly instructing the jury on how to consider the weight of his statements, despite the fact that he did not make any statements to police. (Doc. 9 at 17). Before the state courts, Dorsey argued that in giving such instruction, the trial court "left the jury with an indelible – and erroneous – impression that Mr. Dorsey confessed to the crime, and that they had not heard the confession because it was suppressed by the defense." (Doc. 15-5

at 110).  In rejecting Dorsey's argument, the Alabama Court of Appeals found that:

> The record reflects that Middleton and Brooks testified as to many statements Dorsey made concerning the planning and execution of the robbery-murders.  Moreover, during this jury instruction the trial court prefaced the instruction by stating, 'the alleged confession or statement.' Clearly, this instruction was based on evidence presented at trial.

Dorsey, 881 So. 2d at 518.

Having reviewed the testimony of Middleton and Brooks as discussed supra, and the trial court's instruction, the Court agrees with the Alabama Court of Appeals, for the reasons stated in its memorandum opinion, that the trial judge did not err in charging the jury concerning the weight to be accorded to Dorsey's "alleged" confession or statements.  The Court finds that this instruction was based on evidence that was presented at trial.  Indeed, testimony was presented that Dorsey made incriminating statements to Middleton, Brooks, and Windell Jordan, his fellow inmate.

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an

unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### e. Examples from State's Case

Dorsey argues that the trial court erred when, in its instructions to the jury, it used examples from the state's case. (Doc. 9 at 17). Before the state courts, Dorsey asserted that during the trial court's jury charge regarding accomplice liability, the court improperly provided examples to clarify the instruction to the jurors. One example was as follows:

> Take, for example, robbery in the first degree. If you find that a robbery in the first degree or an attempt thereof of Richard Cary was committed by some person other than the defendant, the defendant is guilty of that robbery in the first degree or an attempt thereof if you find, beyond a reasonable doubt, either that the defendant intentionally procured, induced or caused the other person or persons to commit the robbery in the first degree or an attempt thereof or that the defendant intentionally aided or abetted another person in committing the robbery in the first degree or an attempt thereof.

Dorsey, 881 So. 2d at 518. The trial court further stated:

> Likewise, if you find that a murder of the intentional killing type of Richard Cary was committed by some person other than the defendant, the defendant is guilty of that intentional type

62

> murder if, but only if [wherein the trial court
> gave an aiding and abetting instruction]. (R.
> 2191).

(Doc. 15-5 at 105). In rejecting Dorsey's claim, the Alabama Court of Appeals stated "[w]e have approved of a trial court's use of examples in a jury instruction to clarify a difficult legal concept." Dorsey, 881 So. 2d at 518.

The undersigned finds that Dorsey had failed to establish that the trial court's use of examples was improper or prejudicial. Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### 8. Admission of Hearsay

In ground eight of his habeas petition, Dorsey asserts that the trial judge improperly admitted hearsay evidence. (Doc. 9 at 18). Before the state courts, Dorsey challenged as inadmissible hearsay statements made at trial by Calvin

Middleton, Brad Cary, and Rodney Brooks. As with many of Dorsey's other Claims, the question of whether the trial court erred in admitting alleged hearsay testimony involves the interpretation and application of state law by state courts. Thus, the Court's review of this claim is limited to determining whether the alleged errors "render[ed] the entire trial fundamentally unfair." <u>Carrizales</u>, 699 F.2d at 1055.

As outlined by the Court of Criminal Appeals, Dorsey claims that the statements outlined below were inadmissible hearsay. With respect to the testimony of Dorsey's co-Defendant, Calvin Middleton, the statements were as follows:

> Q [Prosecutor]: Did you have any further discussion with Rodney about what happened that night?
>
> A [Middleton]: Yes, sir.
>
> Q: Tell the jury what that was.
>
> [Defense counsel]: Judge, we make the same objection about hearsay, 802 [Ala.R.Evid.].
>
> The Court: Overrule.
>
> Q [Prosecutor]: Tell the -- tell the jury what that was.
>
> A [Middleton]: That we had killed somebody.
>
> Q: All right. Is that the words you used?
>
> A: No, sir.
>
> Q: What -- what did you exactly tell him?

A: We pulled some 187s.

Q: What does 187 mean?

A: Murder.

_____

Q [Prosecutor]: All right. Did y'all have any further discussions once you got in the car?

A [Middleton]: Yes. We asked Rodney did he want to go.

 [Defense counsel]: Judge, I'm going to object and move -- ask if we can approach on this, Judge.

The Court: Come on up.

. . . .

Q [Prosecutor]: Tell the jury what you told or what you said or what was said to Rodney then.

A [Middleton]: I asked him did he want to go.

Q: What did he say?

A: No.

Q: Okay. Did you tell him where y'all were going?

A: Yes, I did.

Q: What did you tell him?

A: Down to Brooklyn to rob somebody.

_____

Q [Prosecutor]: Did you have any further discussion with Rodney about what happened that night?

A [Middleton]: Yes, sir.

Q: Tell the jury what that was.

[Defense counsel]: Judge, we make the same objection about hearsay, 802.

The Court: Overrule.

Q [Prosecutor]: Tell the -- tell the jury what that was.

A [Middleton]: That we had killed somebody.

Dorsey, 881 So. 2d 500-01. In rejecting Dorsey's claim, the Alabama Court of Criminal Appeals found that the statements were not excludable as hearsay. Id., 881 So. 2d at 501. According to the Court, "Middleton's own statements were, by definition, not hearsay. The statements that Middleton testified were made by Dorsey were correctly received . . . because they were admissions by a party opponent. Rule 801(d)(2) states that such statements are admissible if 'the statement is offered against a party and is . . . the party's own statement in either an individual or a representative capacity . . ..'" Id. (internal citations omitted).

The Court agrees with the Alabama Court of Criminal Appeals, for the precise reasons provided in its opinion, that these statements do not constitute hearsay. Because there was no error, the admission of these statements did not render Dorsey's trial fundamentally unfair. Thus, Dorsey is not entitled to relief on this claim.

Dorsey also challenges the testimony of one of the victim's son, Brad Cary, regarding gunshots. The disputed statements were as follows:

> Q [Prosecutor]: Well, since you didn't think anything about it, then what did you do then?
>
> A [Cary]: I was -- I was going to go out and see what they had shot. So, my -- I asked my mom, I told her I was going to the store and she said wait, they still may be shooting.
>
> [Defense counsel]: Judge, I'd object to that conversation as hearsay.
>
> The Court: Overrule.

Id. In rejecting Dorsey's claim of error, the Alabama Court of Criminal Appeals explained, "[c]learly, Cary's explanation of what his mother said was not offered for the truth of the matter asserted; thus, by definition was not hearsay." Id. The Court agrees with the Alabama Court of Criminal Appeals for the reasons set forth in its decision. Indeed, the record reflects that Cary's testimony regarding his conversation with his mom was not offered to prove the truth of the mom's statement; thus was not hearsay. The testimony was instead designed to show the effect that the discussion had on Cary's actions. Furthermore, even if the testimony could be deemed hearsay, it did not have a material effect on this case given the overwhelming evidence against Dorsey, thus, it did not render Dorsey's trial

fundamentally unfair. Accordingly, Dorsey is not entitled to any relief on this claim.

Dorsey further challenges the statements below made by Rodney Brooks, who was with Dorsey and Middleton prior to the robbery and murders and to whom Middleton confessed. The disputed statements were as follows:

> Q [Prosecutor]: All right, sir. Did you hear any conversation between Ethan and anyone else in the house?
>
> A [Brooks]: Rod, Rod Lawrence. He asked Rod for some money —
>
> [Defense counsel]: Judge, we'd object to this on hearsay grounds.
>
> [Prosecutor]: It's a statement that the defendant made, Judge.
>
> The Court: What now?
>
> [Prosecutor]: Statement the defendant made.
>
> [Defense counsel]: Judge, all statements the defendant made-(inaudible)-
>
> The Court: Overrule.
>
> Q [Prosecutor]: What did Ethan say?
>
> A [Brooks]: He asked Rod for some money.
>
> Q [Prosecutor]: Did you and Calvin have any conversation then in the club?
>
> A: Yes, sir.
>
> Q: What did he have to say?

> [Defense counsel]: Objection, 802 (Ala.R.Evid.).
>
> The Court: Overrule
>
> Q: What did Calvin say?
>
> A: He said that they hit a store in Brooklyn.

Id., 881 So. 2d at 501-02. In rejecting Dorsey's hearsay contention, the Alabama Court of Criminal Appeals reiterated that these statements attributed to Dorsey and Middleton constitute admissions by party opponents, and as such, they are admissible. The Court agrees, and finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### 9. Conviction Based on Perjured Testimony

In ground nine of his habeas petition, Dorsey argues that his conviction is based on perjured testimony. (Doc. 9 at 19). Specifically, Dorsey claims that while his case was proceeding through the appellate process, his accomplice, Middleton, filed

a Rule 32 Petition in which he admitted that his statements implicating Dorsey were false. As a result, the trial court conducted an evidentiary hearing to determine, inter alia, whether Middleton's trial testimony was indeed false. Upon questioning, Middleton testified that he filed a Rule 32 petition recanting his statements and advised that "[t]he reason why I did that is to get Mr. Dorsey and his buddies off my back so I could live peacefully in the prison." (Doc. 15-6 at 118). He further testified that he only recanted in order to "help Mr. Dorsey." (Id.).

As noted supra, Dorsey's rule 32 petition was denied, and on appeal, the Alabama Court of Criminal Appeals rejected Dorsey's petition and found that the record "clearly refutes" his contention that he is entitled to a new trial based on Middleton's Rule 32 petition. (Doc. 15-11 at 18). The Court agrees, for the exact reason provided in the memorandum opinion, that the record does not support Dorsey's contention that Middleton's testimony was false. As outlined supra, Middleton gave detailed knowledge of the robbery and murders that was corroborated by several unrelated sources, including forensic evidence. In addition, Middleton stated, under oath, during his Rule 32 evidentiary hearing that the statements he made confessing to his and Dorsey's involvement in the murders were,

in fact, true. (Doc. 15-6 at 143); see also (id. at 157-58) (confirming that he was involved in the murders as he testified at Dorsey's trial but desired a new trial because he "got a raw deal").

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

### 10. Ineffective Assistance of Counsel

In ground ten of his habeas petition, Dorsey asserts that his trial counsel was ineffective because he did not cross-examine Brooks concerning potential exculpatory evidence. (Doc. 9, pg. 20). Dorsey presented this claim in conjunction with a related newly discovered evidence argument during his Rule 32 proceedings. He argued that the state unconstitutionally failed to disclose favorable evidence to the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963). He also argued that his

trial counsel was ineffective for failing to present evidence of a confrontation between him and Brooks' during which Brooks recanted his assertions about Dorsey's involvement in the murders. As outlined by the Alabama Court of Criminal Appeals in its memorandum opinion affirming the denial of Dorsey's Rule 32 petition:

> Dorsey testified at the final Rule 32 hearing. The gist of his testimony was that on the day before he was arrested, he was interrogated at the Andalusia Police Department. When Dorsey continued to deny involvement in the crimes, law enforcement officials told Dorsey that Rodney Brooks, who was also a suspect, had implicated Dorsey in the crime. According to Dorsey, Brooks was then brought into the area where Dorsey was being interrogated, and Dorsey was given an opportunity to confront Brooks about what Brooks had told the authorities. Dorsey said that when he confronted Brooks, Brooks admitted that his statement that Dorsey told him that he had robbed and killed someone was false. Brooks'[ ] recantation of his previous statement was supposedly made in the presence of the law enforcement officials. Dorsey testified that an officer took notes during the interrogation and that the interrogation was also recorded on a tape recorder.
>
> Dorsey testified that nine months later, when he was reviewing a discovery package, he read Brooks'[ ] statement that implicated him in the crimes. Dorsey said that he told his trial counsel that Brooks "was lying," and that his counsel should get a copy of the tape recording that was made during Dorsey's interrogation. Dorsey testified that the prosecution denied having any statements where Brooks admitted that what he told the police regarding Dorsey's involvement in the crime was false.

> Five law enforcement officials, who were involved
> with the arrest and/or interrogation of Dorsey,
> also testified at the final Rule 32 hearing. In
> addition, an affidavit from the primary
> interrogating officer was submitted for the court's
> consideration. None of those witnesses' testimony
> supported Dorsey's allegation that there was a
> confrontation between Dorsey and Brooks while
> Dorsey was being interrogated.

(Doc. 15-11 at 11-12). In rejecting Dorsey's newly discovered

evidence claim, the Alabama Court of Criminal Appeals found that

Dorsey failed to prove by a preponderance of the evidence that

he had newly discovered evidence entitling him to relief. (Doc.

15-11 at 16).

With respect to Dorsey's ineffective assistance of counsel

claim, the appeals court found that Dorsey's allegation

regarding his counsel's failure to utilize impeachment evidence

seems inconsistent with his allegation of newly discovered

evidence. According to the court, on the one hand, Dorsey

claims that he learned *after* the trial that the prosecution had

withheld evidence regarding the confrontation. Yet, on the other

hand, he argues that his counsel was ineffective for not

presenting evidence of the alleged confrontation for impeachment

purposes. The court also found that:

> Dorsey did not establish by a preponderance of the
> evidence that Brooks recanted his story due to a
> confrontation with Dorsey. Furthermore, as argued
> by Dorsey in his <u>Brady</u> claim, his trial counsel did
> not have any documentary evidence of this alleged

confrontation. In fact, at the evidentiary hearing, Dorsey's trial counsel testified that he cross-examined Brooks with any impeaching evidence that he had at that time. Counsel testified that he did not cross-examine Brooks about the alleged confrontation because 'to the best of [his] recollection, [the defense] did not have that at trial.' Therefore, it begs the question of how counsel could be deficient for not questioning a witness at trial on a matter that counsel did not become aware of until after the trial? Dorsey failed to prove that his counsel's performance was deficient in this regard. Accordingly, he was due no relief on this allegation.

(Id. at 18).

The Court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that Dorsey has failed to prove that his counsel's actions were deficient. As outlined supra, when applying the Strickland standard, courts may settle an ineffective assistance of counsel claim by negating either the performance or prejudice prong. Oats, 141 F.3d at 1023; Butcher, 368 F.3d at 1293. Dorsey has not established that his counsel's performance was deficient in relation to this claim. As found by the appeals court, Dorsey failed to prove that his counsel had evidence of the alleged confrontation between him and Brooks. Given the absence of any such evidence, and the fact that Dorsey, the only person who contends that there was a confrontation, did not testify, his trial counsel simply did not have any evidence upon which to impeach Brooks about the alleged confrontation.

74

Accordingly, the Court finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), that the Alabama Court of Criminal Appeals rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and that such alleged error did not render Dorsey's entire trial fundamentally unfair. Therefore, Dorsey's claim that his constitutional rights were violated is without merit.

For each of the reasons set forth above, the Court finds that Petitioner's habeas petition is due to be denied in its entirety.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows ... that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 146 L. Ed. 2d 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090, (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003).

None of Petitioner's claims warrants the issuance of a Certificate of Appealability in this case. For the reasons discussed above with respect to Dorsey's claims, reasonable jurists could not debate whether any of his claims should be resolved in a different manner or were adequate to deserve encouragement to proceed further on the merits. The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability. Because Petitioner is not entitled to a Certificate of Appealability, any request for leave to appeal in forma pauperis is likewise due to be denied.[10]

_____

[10] The guidelines for proceeding in forma pauperis are set forth in 28 U.S.C. § 1915. An appeal may not be taken in forma pauperis if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); See Fed. R. App. P. 24(a)(3)(A); Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that "good faith" is "an objective concept" and that "not taken in good faith" is "a synonym for frivolous"); DeSantis v. United Techs., Corp., 15 F. Supp. 2d 1285, 1288-89 (M.D. Fla. 1998) (stating that good faith "must be

## IV.    CONCLUSION

Based on the foregoing, it is the opinion of the undersigned Magistrate Judge that Petitioner's constitutional rights were not violated in this case.    Therefore, it is recommended that Dorsey's petition for a writ of habeas corpus be denied, that this action be dismissed, and that judgment be entered in favor of the Respondent, Gary Hetzel, and against the Petitioner, Ethan Eugene Dorsey.    It is further recommended that any motion for a Certificate of Appealability or for permission to appeal in forma pauperis be denied.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.    Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28

---

judged by an objective, not a subjective, standard" and that an appellant "demonstrates good faith when he seeks appellate review of any issue that is not frivolous").    An appeal filed in forma pauperis is frivolous if it appears that the appellant "has little or no chance of success," meaning that the "factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'" Carroll v. Gross, 984 F. 2d 392, 393 (11th Cir. 1993) (citations omitted).    For the reasons previously stated in addressing the Certificate of Appealability, the undersigned concludes that an appeal in this case would be without merit and would not be taken in objective good faith.    Thus, Petitioner is neither entitled to a Certificate of Appealability nor to appeal in forma pauperis.

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **6th** day of **September, 2013.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**